Case number 15-7062. Ronald Eugene Duberry et al. Appellants v. DC et al. Mr. Page for the appellants, Ms. Wilson for the appellees. Mr. Page, before you begin, let me make a couple of announcements. First of all, we have the fan on because it's warm in here, so if council would just speak up. We don't want to cut it off because it is warm. And then I also want to welcome from Bridgewater College, the Pre-Law Society, and their professor, Professor Ferguson. So the pressure is really on council this morning, not only to wow us, but to wow those budding lawyers. I feel it, your honors. Thank you very much, your honors. May it please the court, my name is Aaron Page, and I'm representing appellants Ron Duberry, Harold Bennett, Maurice Curtis, and Robert Smith, and this appeal. Your honors, LEOSA was designed to intrude on state law. It was designed to intrude on a classic state prerogative, firearms regulation, and a lot of people didn't like that. It took a long time to get through Congress, and it only got through with a number of balances and compromises that I think are important to understanding the nature of the district's conduct in this case, and the nature of the right and its enforceability, which is obviously the focus of the district court's opinion. Now, the right, I mean, it's always worth sort of emphasizing that this statute is about conferring this right. That's all it really does. There's no spending. There's no other sort of regulatory regime. This is designed to confer a right on individuals, and now it's a conditioned right, and clearly one of the conditions is that individuals who would exercise the right need to carry certain documents that have certain characteristics, and those are set forth in subsection D of the statute. And I think a lot of other cases that are in the briefing, you have people coming to the court and saying, well, there's a requirement for the state to issue those documents, and we recognize what a lot of people have said, what other courts have said, which is that to issue or not those documents is at the discretion of the state, and that is an important piece, but it's not the end of the story. There's a give and take, even in section D, of different powers. At no point does that issue or not power allow the state to make other changes to the LEOSA framework, the LEOSA eligibility criteria, and even there it doesn't require necessarily an application to the state or the state's express permission. It simply says that you have to carry these documents. Now, why do you, I guess I'm trying to figure out the relationship between the ID and this case, but you concede, or am I wrong, that a state could say simply we refuse to issue IDs to any retired officers? We, yeah, we are recognizing that. I mean, we think it's a close question. It's not really at issue in this case, so we're not. But it's very closely related to the issue in this case because if they can do that for any reason, doesn't that thwart the entire statute? So it doesn't, and this is sort of the point I'm trying to start off on. So D1 talks about like a single ID, okay, that has both characteristics, and it seems it would have to be issued in a timely manner, and that's the kind of thing where it's like the state can issue that or not. Let me back up and say if you're a retired officer, you're not going to have on your person as a retired officer the kind of ID that's necessary, correct? Usually because it has to indicate that you separated. So you might or you might not. I mean, what happens in Section D2 of the statute is it starts to break it apart, okay? It takes part of it away from the state agency state, and there's a key role here that I've always sort of looked at. Well, you may have it. It could be your old ID. You can use your old ID. You know, potentially. I mean, basically, by the time you're at the end of D2B2, you know, the statute is basically saying if you can find anything that will do the job, you can carry. So it's really self-executing in that sense, which is an important thing. If you can get these documents that meet these characteristics, you can carry under a LIOSA, and you don't necessarily have to get a big LIOSA stamp that says that from the state, okay? And, you know, one of the things that I think is important here is the interest of the resident state, okay? So you've got somebody who served in one state but is retiring in another state. Their safety is now actually the responsibility of the resident state. So the resident state may have its own policy objectives, and it may want, you know, highly trained, responsible individuals who carried a weapon for decades on the job to be able to carry a weapon to protect themselves as part of its safety regime for those individuals. And, you know, to the extent that there is a purpose in the statute for, you know, preventing crime, which we don't think is the main purpose, the resident state may also want to further that too. So there's actually an interest of the resident state here too. This is not solely the prerogative of the state agency state. And I think what you see in the district's conduct here is it's leaping out beyond its whether or not to issue power. It's that discretion. And it's intentionally, it's crafted a legal opinion. It's a results-oriented opinion in order to block not only the rights of my clients but also kind of, you know, the extent that that would implicate the prerogatives of the resident state as well. Why is Prince George's County reaching out to D.C. at all? You know, that's a good question. I see it almost, it's almost like a reference check in a sense, like in a bare-bones one. It's sort of saying, well, really, did these guys employ you? Right, but under the statute, they don't have to do that, correct? No, they don't have to do it, absolutely. So isn't your beef with Prince George's County? You know, it could be, but the point is that there was conduct here. It's a Section 1983 case. There was conduct here that was intentionally aimed at depriving this right, okay? So there's a ton of different facts that this could play out on, okay? The fact that my client, that three of my clients live in Prince George's County and that Prince George's County is basically saying— Shouldn't your complaint, maybe not exclusively be, but isn't your complaint that Prince George's County is asking D.C. questions that are irrelevant for Prince George's County to certify them as being firearms trained? Well, potentially, but how would Prince George's County really know otherwise? I mean, I see these questions as not asking for a conclusion of law, but they're really asking for—I mean, it's a mixed question of law, in fact. But to say, did they exercise statutory powers of arrest? It's asking—you know, that's a basic question. It's not asking for D.C.'s legal opinion in that sense. You know, they need to check and make sure these guys did work at the Department of Corrections, that they were corrections officers, they weren't janitors at the department. Why do they need to check that? I mean, I suppose it's a basic matter of checking the accuracy of an application or to make sure that the—I mean, I guess why is a firearms qualification process limited to those individuals is another sort of a good question. But, you know, there's a lot of ways that— Because you can go to private, under the statute, you can go to a private certified firearms instructor? Right. Yeah, yeah. Under D2B? I guess I just don't know how this works, but do they usually then ask for prior employment check? Or do they just certify people who come in to say, yes, you're certified in firearms? So I think they usually do. I mean, it's actually—I should know this because one of our clients actually performs the firearms certifications for other officers in Maryland. There might be liability reasons why they do it. Yeah, there might be any number of reasons. But under this statute, it seems—I guess I'm still stuck on trying to figure out how this case worked and why Prince George's was asking D.C. And maybe I thought—I kept thinking I must be missing something. So they don't necessarily need to. A framework was set up, you know, I think—and to be honest, as LEOS is progressing, the procedures are changing and so forth. But the framework was set up—this is basically the way that they—the only way that And into that process was inserted the—D.C. said, you know, we have a legal opinion. And the documents that were submitted below, you know, clearly show that this is an opinion that was designed to keep in effect, which is designed to try to block these individuals from exercising their LEOSA rights. And, you know, again, what's being asked of them is really are these basic questions that reference the federal law. Okay, so there is this question, and I appreciate the cases that Your Honor sort of provided to us by the order. You know, this is really—while there is a question of about, to some degree, about the compatibility of what a power of arrest means in D.C., in the D.C. Code, at the end of the day, the requirements are set forth in federal law. And we're really talking about the substance of, you know, the content of federal law here. So the federal law says a statutory power of arrest. As long as we've got a statutory power of arrest, we're fine. And the legal opinion—I mean, first of all, the district started with a much broader attempt to shut this down. And if you look at Mr. Dewberry's application, it says Mr. Dewberry was not a law enforcement officer. It's like written in all caps on it. And that's—they've eventually moved away from that because he clearly is a law enforcement officer under the statute, which includes, in its definition, references incarceration officers. And what do you think statutory powers of arrest refers to? So, again, it's any— State or federal? How do you read that? Where do you find the statutory powers of arrest to make sure that this retired law enforcement officer has them? So it would just be basically any statutory power of arrest. And we have— But doesn't it have to be D.C.'s? Absolutely. And there is one in the D.C. Code, right? So there's a very clear statutory power of arrest in the D.C. Code applies to our officers when they were on the job. They carried cards that literally said we are—this individual is entitled to make arrests, and it's cited in the D.C. Code. That's on—it was on the identification cards they carried at the time. Now, so the only way the district is sort of getting around this is by saying, well, they didn't exercise this particular statutory power of arrest, which involves arrest for commission of a crime and probable cause. And there's just no support for that at all in the text of LEOSA. And, in fact, it's contradicted by the inclusion of incarceration officers in the definition, because why would you—if that was a limiting principle, why would you include incarceration in the definition anyway? Can I ask you further under C.2, authorized by law is a reference to state law, authorized by law to supervise the incarceration of any person? I think it would be any law. I mean, I think it would certainly—like, I'm thinking of federal officers and federal— pretty much their entire career, because the Department of Corrections used to be an agency of the Federal Bureau of Prisons. I mean, they actually exist in kind of this interesting lacunae, because they were federal officers their entire career. They retired. Today, corrections officers for D.C., right, the D.C. is only holding misdemeanants. So, you know, to some degree, there might be more of a policy reason to restrict current officers from exercising their LEOSA. And, again, that might happen under—if the district is acting under its discretion to award or not, you know, to grant or not this I.D., that might be the case. But to go out of their way—you know, our officers—and the Federal Bureau of Prisons does provide necessary certifications and does take the position that its officers are LEOSA—are able to exercise their LEOSA. Well, are you saying that these retired officers, we look to something other than the D.C. Code? No, we definitely look to the D.C. Code. All right, okay. You know, especially in our— What I'm getting to is, would you put on the record, please, your position about Shoshone mining? Yes, absolutely. So Shoshone mining is, you know, there what you've got—and it's the discussion of it in later cases, because I don't think it actually applies in the later cases. But the discussion of it is where you've got a fundamental state law, causative action, state law, substantive action. Well, I read it, and in Justice Ginsburg's opinion that follows it, and I think it was Mims that footnote—let me get it here. Yeah, no, and I have that here. First of all, it's a rare exception. The difference between the case in Mims, where they did find the federal question existed, and Shoshone, and possibly in your case, is that it not only created, in Mims, not only created the claim for relief, the remedy, but it also supplied the governing substantive law. And that's why I've been asking you about D.C., because it seems to me that we look to D.C. code to see if they have the powers of arrest. We look to D.C. code to see if they're authorized by law to supervise the incarceration. And that sounds to me like a Shoshone mining. So I tried to answer that earlier. So the substantive law is federal law. The substance law is that there's a statutory power of arrest, and then you just look for any power of arrest in D.C. So it's not, again, what we're looking for. And again, to some degree, what Shoshone mining asked for was that there be, that it is a controversy, which really and substantially involves a dispute or controversy as to a right which depends upon the construction or effect of federal law. So it's not just that there might be a state law issue, or state law might determine how it goes. As long as there's a federal law issue, we don't have a Shoshone mining issue. And the Shoshone mining case was really fundamentally a state law case, right? I mean, not only was it state law, it's talking about the local customs of miners. So it's something that really belongs at the local level, and there was a threat that it would be pulled up to the federal level sort of counterintuitively to the nature of the case. And basically, all the other cases are like that, too. I mean, all the other cases involve things where you have a cause of action that is expressly provided for state law, where there's some sort of reference that this should be done at state law. Whereas here, we have a federal substantive law. We have a federal cause of action with Section 1983. And the fact that there is a state law issue, that you're going to look to state law to determine the content of federal law, to sort of check the box about whether or not they had a substantive power of arrest, does not make it such a fundamental state law case for Shoshone, as was sort of talked about in Shoshone mining, or as talked about in the other cases. All right, let me ask you this. What is the right that you say this statute gives you? Is it the right, and it's conditional. I understand that first. It's a conditional right. Is it the right to carry concealed, or is it the right to get this certification? It is the right to carry a concealed weapon. I see I'm out of time. Go ahead. You can answer all our questions. So, yeah, it is the first right that's set forth in the statute, the right to carry a concealed weapon. And the question simply becomes whether or not the conduct that we're talking about affects the deprivation. And obviously, there's some, you know, you can't go too far out there and say, well, X cause Y cause Z cause the deprivation. But where there is, where the conduct is intentionally designed to lead to a deprivation and does cause a deprivation, the sorts of issues with respect to the attachment and defining the right that the government, that the district court relied on, you know, again, using cases like Blessing and Gonzaga that are all spending clause cases, that are all saying you don't want to use Section 1983 litigation in the context of, you know, in order to sort of force yourself in and become an administrator of complex federal law. None of that really, you know, should apply here. We basically have a federal right. We should simply look to whether or not there is a deprivation based on the nature of the conduct. All right. Thank you. One other question. This might be repetitive, but if you concede that the state could, or a state could refuse to issue an identification saying that you had worked at the state corrections agency, why can't the state do the lesser step of simply refusing to answer questions that come from another state about your prior employment? I think it comes down to looking at the scope of discretion that was accorded to the state, and sort of my opening point about the fact that that's there in the statute, but it's not all-encompassing. And, you know, basically at the end of the day, this is governed by the federal eligibility criteria, federal law, and these are questions you simply have to satisfy federal law. So you're looking to that. The way the state needs to achieve its policy objectives is through issuing or not the ID, not to basically craft a legal opinion and then give basically a completely counterintuitive answer to what is basically a factual question. But you're conceding that a state could say, you know what, we don't like this federal act, and so for any retired officer who didn't keep his or her ID, we're just going to refuse to issue a new ID to them and thwart the statute as best we can because we don't like it. We view it as an intrusion on federalism. Using that power, using that discretion to issue or not, yes, but to sort of take these additional steps to strike out. I'm surprised that you read the statute. I mean, you concede that and then try to draw this line, but maybe my question is more for your counterpart on that. Well, yeah, I mean, I think we're also looking, and we're looking at the other cases that have sort of held that. So that's not, I mean, I think at the end of the day, we don't feel like we need to reach that issue because we're not here asking. I understand. I'm just trying to see the linkage, but I won't take up more of your time or more of Mark's time. I could see, we could certainly argue it the other way. We just haven't presented that argument because we don't really want to have that particular fight. We think this can be decided based on the fact that they're going beyond the bounds of their accorded discretion under the statute. Thank you. No, I'm okay. Ms. Wilson, good morning. Would you address the Shoshone mining cases first? Yes. The district, it did raise the issue of jurisdiction below, but did not renew it on appeal. I think based on the district court's analysis that despite the underlying state law issue of whether correctional officers have a statutory right of arrest, that there is a preliminary federal question here about does LeOSA create any right enforceable under 1983 as the district court found. It does have a sort of chicken and egg feeling to it. You look at whether there's an enforceable right under 1983 or whether there's an underlying local law right. But I think as the district court found, you don't get to whether they have the local law right of statutory power arrest until you find the court first makes a determination whether LeOSA creates a right. But the court certainly has the duty to decide the jurisdiction. The key issue here is the nature of the right under LeOSA and the right that plaintiffs seek to enforce. LeOSA creates a right to carry the firearms if the other conditions are met, if the officers meet the definition of a qualified law enforcement officer, if they get the ID and if they meet the firearms training. And plaintiffs concede essentially that they are not entitled to the ID and the right that they do seek to enforce is indistinguishable. They seek a right to have the district certify that they meet the definition of qualified law enforcement officer under LeOSA to facilitate them getting the ID and engaging in firearms training. Is this standard that the questions are asked by other states to the former agency? I have no information on that, not in the record. The way Prince George's did here in D.C.? I agree it would make sense to check the person's credentials. And different states can have different rules for correctional officers. In some states they may carry guns. In other states they may not. So I think to follow up and establish whether a particular state. But as I understand the appellant's argument, it's that if a statute gives a right of arrest, there is no discretion left to the state. So following up on Judge Kavanaugh's question, PG County could simply read the D.C. statute and see if there is power of arrest that correctional officers have. Well, in that case, their claim should be against PG County. No, I understand. I understand. But I'm just trying to understand what this district's position is. In other words, suppose the plaintiffs had worked for the D.C. Department of Corrections. If D.C. were to advise PG County that they did not work for the D.C. Department of Corrections, does your view of the district's discretion encompass that type of discretion? Yes. I mean, PG County's application says to the district, did they work for the Department of Corrections and did they meet the definition of qualified law enforcement officers? So following up on Judge Henderson's questions, if D.C. were to respond to PG County that, in fact, they were not correctional officers, then the argument that they want to bring into the federal court is basically a D.C. claim. I mean, that's what we're trying to figure out here. Both subject matter jurisdiction and 12b-6. As I understand it, they say that basically after the federal statute was passed, the only discretion D.C. has is basically to check yes on this form that PG County said. Were they correctional officers? Did they retire in good standing? And then PG can decide whether they have the training or not. So their position, as I understand it, is that by the district saying there is no statutory power of arrest, D.C. has gone way beyond any discretion that the statute could give it. And this is ignoring for the moment that D.C. is not a state, but in any event. Congress left it to the states to implement this program and to decide whether the law enforcement officers are qualified, whether they're entitled to the ID. Here, how do you divide that authority between PG County and the district, whether PG County makes an independent decision or the district makes the decision? It is still the state's prerogative to decide whether someone qualifies as a law enforcement officer. I'm trying to press you on this because suppose a person worked for the D.C. Department of Corrections for a number of years but was a lousy officer and no one in their right mind would want this officer to continue to carry a gun after he retired. Could D.C. simply say he was not a correctional officer? LEOSA does not create a right enforceable under 1983 to compel the district to answer the question in any such manner. So they have to go to the superior court? Yes, under the presumption that agency action is reviewable in superior court if it's not a contested case. So as I read the district court's opinion, and I may be wrong, the district court thought that if in fact the plaintiffs were correct that D.C. has no discretion, then they do have a claim that's properly in federal court. That if D.C. has no discretion, you check the boxes and that's the end of it. There's a statute that says they had certain powers of arrest, they were correctional officers, they retired in good standing. Yes, I think that's what the district, that there is an underlying federal question of what is the right created by LEOSA. Well, what is the right created in the sense of what is the role of the state, the resident state, or the employing state? What is the role? Well, in other words, I understand the plaintiffs, they're saying, look, this was a controversial matter, but Congress finally came down on the side of the retired officers and said, look, you can carry a gun. If you meet the criteria. If the state, there's a statutory power of arrest. So you wouldn't be here, I assume, if the D.C. code clearly said a retired D.C. correctional officer has the power of arrest. Presumably, we would not have gotten here, but it's still not a federal question. Sorry, there's still no right under LEOSA to compel the district to answer these questions in any particular way. But what good is LEOSA then if the states can, under your theory, refuse to issue an I.D. that says you work there, or refuse when the reference questions come in on the firearms qualification, refuse to answer those correctly or at all? Well, that's the way Congress designed the program, that states don't, I mean, if someone has a LEOSA credential in Texas. I thought the point of the statute was to give individual officers an entitlement to carry firearms, regardless of what individual states might think about that policy choice, to nationalize the question of whether individual officers can carry. Well, that's not the way the statute was written. The statute is written to provide a defense in criminal prosecution, but Congress did leave it to the states to issue the I.D.s. to certify the firearms training, and there's simply no... Defense to conviction, the first sentence of the statute, notwithstanding any other provision of the law of any state, an individual who is a qualified, retired law enforcement officer and who is carrying an identification may carry a concealed firearm. Yes, well, there are those two conditions, and here it's indistinguishable. I mean, it's not an absolute right to carry. It's a right to carry if you have received the identification, if you have been certified in firearms training. I don't think Congress thought, or maybe this is a question, so I don't think it makes sense to read the statute to think that Congress thought that the states could just resist the policy choice, and they can resist the policy choice by refusing to issue the I.D.s. or refusing to answer the questions of whether you ever worked. Judge Rogers' question really goes to the heart of it for me, which is, could they deny that they'd ever even worked at the Department of Corrections? Can they just lie on the form with impunity under this statute? There's no right under LEOSA to force a state to answer correctly. That would have to be enforced in state court. LEOSA simply there's no- And what good is this right? Say every state or say many states said, you know what, we disagree with Congress's policy choice here, and we are going to express our disagreement by refusing to issue I.D.s. to the retired law enforcement officers who no longer have an I.D. and thereby thwart the statute. And you're saying that's perfectly consistent with the design of the statute. And I think plaintiffs have conceded that. But put aside the concession. Yes. Does that make sense? Yes. I mean, if Texas issues the LEOSA credential, the district has to honor that. Your reading is a state's rights statute. And I'm questioning whether it's really an individual rights statute, because the whole point was that Congress thought the states were not adequately protecting the individual right that they deemed important, namely the individual right of retired law enforcement officers to carry. Well, I mean, there were two purposes to the law. One, to allow officers to protect themselves. And two, to promote the safety of the community, to allow them to make arrests wherever they are. Maybe you're right, which is those states, you know, Texas decides we're going to certify our officers, then those Texas certified officers are good to go throughout the United States. But Maryland says we're not going to certify any retired officers, then Maryland retired officers are out of luck. Right. I think that's the way this statute's written. But that's very, it's not written that way, that's for sure. Now, whether it's, it's not necessarily written the other way either. That's the problem in this case. Well, and if it's not clear, I mean, Blessing and Gonzaga make it absolutely clear. The right has to be unambiguous. Congress knows how to confer the right that plaintiffs seek. But doesn't that first sentence of the whole thing certainly suggest it's an individual right? An individual may carry. An individual who's a qualified retired law enforcement officer and is carrying. It doesn't say anything about states' rights there. But that's like Gonzaga. I mean, in Gonzaga there was. It's like a full faith and credit kind of theory that you have with the statute, whereas the statute is written really in terms of the individual officers. Well, in Gonzaga, Congress created a right that individual students' records would not be released, but found that Congress had not created an enforceable right there, that there was no unambiguous language showing that individuals have an enforceable right under 1983. I mean, if you look right at the beginning of the same chapter, 925A, if a state creates an error in a background check, Congress authorized action to correct that information. The statute under your theory should say something like, no state may deny the right to carry of an officer who is certified by another state. I mean, that's the full faith and credit kind of theory you have. It doesn't read at all like that, though. As I see it. And, you know, I agree it's a little bit confused. And it's plaintiff's burden to show that the right they seek to enforce under 1983 that Congress intended to create an enforceable right. And there's no – I mean, here, you can carry if you meet these two subdivisions. If you meet that definition of qualified retired law enforcement officer, it has that narrow scope, and it leaves it to the states to decide whether you're a qualified retired law enforcement officer. That just the language of the statute as a whole, especially compared to 925A, which specifically says if a state makes a mistake, you can sue to correct that mistake. There's nothing like that in LEOSA. The right they claim is simply not unambiguously created by the statute. I mean, blessing is clear. It has to be clearly set forth in the statute, and there's no language or congressional intent to create a right enforceable in 1983. I mean, if the district makes a factual mistake, go to superior court and have that factual mistake corrected. And what will you all say? Suppose they go to superior court, what will you all say? We will say that correctional officers in the district don't carry guns on the job. They don't carry guns to and from their houses. And they have only a limited right to take and retake parolees on a parole warrant, and that is not a general power of arrest, and it is not akin to the ‑‑ So you would not contest their case in superior court on any ground other than the merits? I think there might be an exhaustion issue up through the police department. I just want to make sure you're not promising something that's an empty promise. I understand the court's concern, but short of some kind of exhaustion requirement up through the Department of Corrections, I think the presumption is that the agency action is reviewable in superior court. You know what, I guess ‑‑ If there's law to apply. I mean, you know, you can't ‑‑ I just think it's odd to read this statute and come away thinking, actually, it's up to each individual state to decide whether we're going to give these IDs and we can thwart the whole thing. But if the court were to find a federal right here, then, you know, if there's a telephone call between PG County and the district, is someone a qualified officer or not? You can then enforce that in federal court. If the application gets lost in the mail, is that a right that we also intended to create to enforce in federal court under 1983? So is the argument here that while normally or typically it might be that state law is clear on its face that a correctional officer has the power of arrest, where it is unclear whether a retired correctional officer has the power of arrest as contemplated under the federal statute, then it is a matter on which the states have the final say. In other words, D.C. may not afford to its officers this power of arrest, whereas Virginia may. It depends. And that's a question for the states to answer. And Congress wasn't predetermining the answer to that question absent a state statute that's on its books at the time the officers are seeking these certifications. I think that's precisely right, that Congress left it to the states to administer the program and to decide which of their officers qualify under the LEOSA definition of statutory powers of arrest. The state has to decide if that state gives which officers have statutory powers of arrest. The problem I have, and this is more a comment and you can respond, the problem I have is if you came in here and just said, actually these folks did not have statutory power of arrest, we could decide that yes or no, whether we agree with you, and maybe there's some deference, I'm not sure, to D.C. in determining whether they had statutory powers to arrest. But you're coming in with a much broader legal theory that actually renders the statute, would give the states, individual states, the ability to thwart the statute by refusing to issue IDs or to answer questions accurately that come from other states about prior employment. And that strikes me as a pretty significant step for us to take. And maybe that's right under the statute, but a right, this thing was a right, but a right without a remedy, which would be the upshot of this. Well, it would be a right without a federal remedy. It would be a right. Or a state remedy under your theory in some states. Because you're saying the state, they can just say, you know what, we hate this statute. And we're just going to refuse to issue IDs. And you're saying they can do that, that may be wrong, quote unquote, but it's totally unenforceable in federal court when a state does that. But the situation here is it's undisputed that the district does have a LEOSA program and does certified officers in the act. I understand that, but this is the problem. Your legal theory, those are the facts, but your legal theory would say, you know what, they could just resist and that would be totally unenforceable in federal court. They could resist by refusing to issue IDs. And, again, some of these retired officers, I'm not quite sure how this works, and this is one of the problems I have in this case, but some of these officers, and I think in this case they all do have their old IDs, but some may not and would need a new ID from the State Department, police, corrections, whatever. And a state could even refuse to give the IDs to its police officers, under your theory, because they don't like this statute. I think that's right. And one of the cases we cited, where New York, I think it was, didn't participate in the program, that it's the state's prerogative not to participate in the program. And for its officers, they do have to recognize the liens and credentials of officers from other states. But that's the way Congress wrote the law, and there's no indication here that Congress intended to have a right enforceable in federal court to have the district check the box on an application certifying that they qualify, that they have statutory powers of arrest. There's just simply no unambiguous right here that was meant to be enforced in 1983. And to the extent plaintiffs think the district checks the wrong box, they can pursue that question under local law in local court. Can I ask you one question, just to be clear? Why are you emphasizing whether they can carry firearms when they are law enforcement officers? Is that part of what makes, under D.C. law, what makes somebody a law enforcement officer? The power of arrest is tied to the power to carry a weapon? No, I made that comment because counsel in his argument said they carry guns, which I don't think they do. It does come down to statutory powers of arrest, and it may be that one reason the district doesn't give its officers statutory powers of arrest is because they don't carry a gun. Okay, but that isn't part of D.C.'s decision. In other words, you didn't carry firearms when you were active. We're not going to certify that you can carry them now. No, it's that they don't meet the definition of statutory power of arrest. Okay. So if there are no other questions, I ask the court to refer. Thank you. Does Mr. Page have any time? Why don't you take a couple minutes? Okay, thank you, Your Honors. Let me first return to my concession and just make sure exactly I've got what I conceded or didn't. What I conceded was at the beginning that it's complicated, okay, that there's a give-and-take in the statute. There's a give-and-take even in that section, and there isn't something in the statute that clearly mandates that the state issue that ID. Now, the argument that by not issuing the ID, you're frustrating the purpose of the entire statute is certainly a good argument, okay? Now, because there are these other cases that are out there, we did not feel like we needed to address that issue. But at the same time, this case would be an adequate vehicle to address that issue if, as you said, the district's legal position is that they can frustrate the statute by simply refusing to issue IDs. And, you know, it may be that there needs to be a split. I agree. You need to clarify your concession. But the problem is that the district court, I mean, that's a new theory of the case, as it were, and the district court was concerned that it wasn't clear exactly what relief you were seeking. And it came up with these theories, neither of which you endorse. But I'm a little troubled by that. I mean, as I understood it, for us to reverse the district court on the theory you raised, assuming subject matter jurisdiction, we would have to say that the district had no discretion. Isn't that correct? Well, I think what you would have to say is that the conduct that was alleged below, or the conduct that's at issue here is clearly not part of any discretion that the district has. So the answer to my question is yes, isn't it? Yes, absolutely. The particular conduct that we're focusing on, that there was no discretion for that, yes. So, you know, I mean, I think some of this goes to... What about the individual right? I don't mean to interrupt. Go ahead. But I was going to ask about the individual right versus state right theory of the statute. So their theory of the statute is that it gives, say, Texas a right to certify its own officers, and then they're good retired officers, and they're good to go throughout the United States. But if Minnesota doesn't want to certify its officers, retired officers, then they don't have a right to carry throughout the United States. Right. So each state can make a decision to kind of get its officers covered throughout the United States. What about that? Right, and we disagree with that. I think your description of it as providing an individual right to sort of provide a national policy choice on this issue is absolutely accurate. I mean, even the way Ms. Wilson was describing it as far as this is a program that was left to the states, you know, states can act under this, and they can implement programs, but it's conferring an individual right. And the day it went into law, there were individuals who may have had identification that met the criteria and immediately were eligible to carry under LEOSA. So it really provides, there's an interplay here that you don't see in a lot of different statutes, but it's not just a program that the state is implementing. This is a problem with the factual record, but do you know how many retired officers have their old photo ID? I don't, and we would like to be able, there's a couple of issues even that have popped up here that I think we're entitled to litigate below. So, I mean, even this issue about carrying guns on the job, I mean, from my discussions with my clients, I know, you know, I'm not sure if they carried them in. I know they definitely were issued firearms during, and again, there's a whole, you know, there's different issues here potentially with the fact that they were. And there are different types of correctional officers too. There are different types, absolutely. Some carry guns, some may, and some may not. Yeah, and so I think we can, you know, that's the kind of thing that we should be able to litigate. And this actually goes back to the question about, well, what would this go for? What if they just lied? What if the district just said, you know, they weren't even corrections officers? You know, again, that's the kind of thing, because we have Section 1983, and if that lie was basically had the effect of depriving a federal right, a very clear federal right, if it was aimed at depriving a federal right, that's what gets us into, allows us to use Section 1983, and that's why it's not, you know, that's why we're not necessarily going to superior court. I mean, you know, again, the very purpose of Section 1983 was to interpose the federal courts between the states and the people as guardians of the people's federal rights. So we're not taking Section 1983 out of context here, and that's very important. All the discussion with respect to Blessing and Gonzaga, you know, all of those cases are saying don't bring Section 1983 litigation into a very different type of statute. This is a rights-protecting statute. That's the only thing that it does. So bringing Section 1983 to bear here is really serving the core purpose of Section 1983. So in your reply brief, you say that the plaintiffs have identification that's sufficient for D-2A, and you say this is a case about city officials acting out of bounds of any conferred discretion, yet here you are saying that they do, states retain a measure of discretion, and that's where I'm just trying to understand. If a D.C. statute said all correctional officers have the power of arrest, period, as counsel for the district argued, the case wouldn't even be here. But if there's some uncertainty under D.C. law, or even some uncertainty as to the individual plaintiffs, if there is a measure of discretion, then isn't that a matter to be worked out under D.C. law? I mean, the federal question would be, arguably, does D.C. retain any discretion? And you've conceded it does. If you had taken a different tack, it would seem to me that all we would be saying is that D.C. has misread its own statute, because it's plain that all correctional officers had powers of arrest, even if not powers of arrest identical to members of the Metropolitan Police Department. Right. You know, this comes down to the concession. The concession at the moment is that the maximum amount of discretion that the district can claim to exercise is whether or not it's going to issue little plastic cards or not. And again, there's a good argument to be made that if they purposely do so to shut down the rights in the statute, that that's frustrating the statute, and that could be challenged. But the reason why we didn't engage that here is that that's not what we're asking. Like, this is basically there are, certainly for our three Maryland plaintiffs, they don't need that from the district. And so what the district is doing is clearly not within that measure of discretion. So we don't kind of need to challenge that, necessarily, in this case. If you did not have the statutory power of arrest of your clients, then you lose. And that is a question of, arguably, of D.C. law. Could we certify that question of the D.C. Court of Appeals? Well, it's a question. So it's not even that nuanced of a question because it turns on a reading of the federal statute. Like, what does the federal statute require exactly? It says a statutory power of arrest. They're not arguing that there isn't a statutory power of arrest. They're arguing, oh, they don't have the particular rights statutory power of arrest. They've got to provide some support in the statute that that's there. So all eyes are eventually going back to the requirements of federal law. So in your theory, the D.C. law is actually pretty clear. The question is whether the federal law covers if you have any power of arrest versus all the powers of arrest. Yeah, yeah, and most we've got a state law issue that's popping into a fully federal case. But the state law issue, you think, is not really disputed. It's how to interpret the federal statute. Well, we certainly, yeah, we think it's an incredibly strange reading of the statute that's sort of designed. I mean, we address it fully in the reply brief in particular, and there's a number of reasons. I mean, even the statutory power of arrest that they're pointing to is not as clear as the statutory power of arrest that my client has. So there's a number of reasons why that's the case. But in any event, if we're with respect to Shoshone mining, it's still the center of gravity is definitely on federal law, and we're simply looking to some degree about compatibility about whether or not there's a federal law. The state law is compatible with that. All right. We have your argument. Thank you. Thank you very much.
judges: Henderson, Rogers, Kavanaugh